United States District Court
Southern District of Texas

**ENTERED**

July 17, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW GONZALES, TDCJ #1289340, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3190 |
| | § | |
| MATT GROSS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On June 27, 2018, the court entered a Final Judgment (Docket Entry No. 20) dismissing the Verified Complaint for Declaratory and Injunctive Relief filed by state inmate Andrew Gonzales under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 4) after considering Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 9) and a report with administrative records under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) ("Martinez Report") (Docket Entry Nos. 13, 14). The Fifth Circuit reversed the court's decision and remanded this case to determine whether Gonzales could prevail on his claim that the defendants placed a Security Precaution Designator code in his records that has restricted his custodial classification in retaliation for filing grievances about a disciplinary conviction. See Gonzales v. Gross, No. 18-20480 (5th Cir. July 11, 2019) (per curiam) (Docket Entry No. 34, pp. 5-6).

After remand, the court granted Gonzales's request to file
Plaintiff's Verified Complaint Amended ("Amended Complaint")
(Docket Entry No. 49), in which he repeats his contention that a
"punitive classification code" was wrongfully placed in his records
for retaliatory reasons because he filed a grievance to challenge
a disciplinary conviction.  Now pending is a Motion for Summary
Judgment on Behalf of Defendants [Matthew] Gross, [Christopher]
Lacox, [Debbie] Ballard, and [Lonnie] Townsend ("Defendants' MSJ")
(Docket Entry No. 60).  Gonzales has filed Plaintiff's Response to
Defendant's [MSJ] ("Plaintiff's Response") (Docket Entry No. 61).
The defendants have filed Defendants' Reply to Plaintiff's Response
to Defendants' [MSJ] ("Defendants' Reply") (Docket Entry No. 62),
and Gonzales has filed Plaintiff's Cross-Motion to Defendants'
[Reply] to Plaintiff's Response to Defendants' [MSJ] ("Plaintiff's
Cross-Motion") (Docket Entry No. 63).  After considering all of the
pleadings and exhibits in the record, the court will grant
Defendants' MSJ and will dismiss this action for the reasons
explained below.

## I.  Background

### A.  The Parties

Gonzales is currently incarcerated by the Texas Department of
Criminal Justice - Correctional Institutions Division ("TDCJ") at
the Polunsky Unit.[1]  Gonzales's claims stem from an incident that

---

[1]Notice of Change of Address, Docket Entry No. 7, p. 1.  For
purposes of identification, all page numbers refer to the
pagination at the top assigned to each docket entry by the court's
Electronic Case Filing ("ECF") system.

occurred at the Estelle Unit, where Gonzales was incarcerated at the time he filed his Complaint.[2]   That incident, which is described in more detail below, resulted in disciplinary charges for assaulting staff during a riot and also resulted in restrictions on Gonzales's custodial classification.[3]

Gonzales sues the following prison officials employed by TDCJ in connection with the classification decision that was made after the disciplinary proceeding:  Matthew Gross, Christopher Lacox, Debbie Ballard, and Lonnie Townsend.[4]  At the time of the events giving rise to this suit, Gross was an Assistant Regional Director for TDCJ.[5]  The other defendants were employed at the Estelle Unit, where Lacox was an Assistant Warden assigned to the High Security Unit, Ballard was Chief of Classification, and Townsend was a Major.[6]  Gonzales also sues a John Doe "Unit Classification Coordinator" from the Estelle Unit, who has not been identified.[7]

The facts underlying Gonzales's claims against the defendants are outlined below based on records from the relevant disciplinary proceedings, the challenged classification decision, and the relevant grievances filed by Gonzales.

---

[2]Complaint, Docket Entry No. 4, p. 2.

[3]Id. at 3-7.

[4]Id. at 2.

[5]Defendants' MSJ, Docket Entry No. 60, p. 7.

[6]Id.

[7]Amended Complaint, Docket Entry No. 49, p. 2.

**B.   Incident Involving Staff Assault**

The incident that forms the basis of Gonzales's claims took place at the Estelle Unit on September 7, 2014, when Gonzales had what he describes as a "scuffle" with a correctional officer identified as Officer Lindeman.[8]  Gonzales explains that he was leaving the "inmate cafeteria" when he saw Officer Lindeman "assault an inmate, by punching him in the face while [the] inmate was in the process of a strip search."[9]  Gonzales "became involved by pushing correctional officer [Lindeman] of[f] the inmate."[10]  At that instant Gonzales "realized" that "four other inmates had simultaneously began fighting with other correctional officers responding to the incident . . . as it was happening."[11]  A sergeant used a chemical agent described as "tear gas" to subdue Gonzales and the other inmates, all of whom were escorted to "solitary confinement" or pre-hearing detention pending an investigation.[12]

According to the Incident Report, Officer Lindeman was in the process of returning a group of G4 custody-level inmates to their

---

[8]Id. at 3.  The plaintiff identifies the officer as "Linderman" or "Lenderman."  See id. at 3, 5-7.  The defendants note that the correct spelling of the officer's surname is "Lindeman." Defendant's MSJ, Docket Entry No. 60, p. 7, n.1.  For purposes of this order the court will use the spelling proposed by the defendants, which is supported by records of the incident.  See Incident Report, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, pp. 55-57.

[9]Amended Complaint, Docket Entry No. 49, p. 3.

[10]Id.

[11]Id.

[12]Id.

cells from the chow hall when he observed an inmate who appeared to have contraband.[13] Officer Lindeman conducted a strip search of the inmate and was inspecting an item that was found in the pocket of the inmate's pants when Gonzales "lunged" at Lindeman and struck him in the face.[14] Officer Lindeman struck back and a scrum ensued.[15] Officer Caden Walker observed the incident and began to respond when several other offenders "ran over and began engaging in the fight with Officer Lindeman."[16] While attempting to intervene, Officer Walker was struck in the back of the head by an unknown inmate, at which time Walker began fighting with two other offenders.[17] Sergeant Tanisha Austin ordered the inmates to stop fighting or she would deploy a chemical agent.[18] While issuing these orders Austin was struck in the side of her face with a

---

[13]Incident Report, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 55. TDCJ has six custody levels which feature increased security restrictions: G1, G2, G3, G4, G5, and administrative segregation, which is the most restrictive classification. See TDCJ Offender Orientation Handbook, p. 6 (Feb. 2017) (listing Prison Offender Custody Level), which is available on the TDCJ Website at: https://www.tdcj.texas.gov/ documents/Offender_Orientation_Handbook_English.pdf (last visited July 13, 2020).

[14]Incident Report, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 55.

[15]Id.

[16]Id.

[17]Id.

[18]Id.

closed fist by one of the inmates but was still able to administer
her chemical agent.[19]   Sergeant Jason Williams was able to respond
and also administered a chemical agent, which put an end to the
insurrection.[20]

None of the inmates who instigated the attack on Officer
Lindeman were injured.[21]   Three of the four officers involved,
however, sustained injuries that required treatment by unit medical
staff.[22]   Officer Lindeman and Sergeant Austin sustained "minor
injuries," but did not require treatment beyond first aid.[23]
Sergeant Walker, however, was treated for "serious injuries" that
required "steri strips" in lieu of sutures to close a laceration
above his right eye.[24]

Gonzales alleges that Major Townsend attempted to interview
him while investigating the incident along with Sergeant Y.
Beltran.[25]   Gonzales refused to speak during the interview or help
with the investigation.[26]   Sergeant Beltran advised Major Townsend

---

[19]Id.

[20]Id.

[21]Id. at 56.

[22]Id. at 55, 57.

[23]Id. at 55.

[24]Id.

[25]Amended Complaint, Docket Entry No. 49, p. 3 ¶ 16.

[26]Id. at 4 ¶ 17.

-6-

that Gonzales was "one of those inmates who are going to refuse to talk but cry later in a grievance."[27]   According to Gonzales, Sergeant Beltran was referring to a grievance that he had filed against her previously after Beltran filed a "fictitious" disciplinary case against him for filing a "fraudulent financial statement" in violation of Texas law.[28]   Townsend reportedly commented that if Gonzales "wrote anything up" he would "personally make sure" that Gonzales got "fucked over."[29] Gonzales states that Townsend then showed him the back of his cap, which had a slogan stitched onto it stating "We Take Care of Our Own."[30]

## C.   Disciplinary Charges

Gonzales was charged with two disciplinary offenses in connection with the melee that occurred in the inmate cafeteria on September 7, 2014, for "inciting or participating in a riot" and "assault" on an officer.[31]   Specifically, Gonzales was charged in Case No. 20150010578 with intentionally participating with several other offenders in an altercation or "major use of force consisting of assaults on multiple officer[s] [that] created a danger of

---

[27]Id. ¶ 18.

[28]Id. ¶ 19.

[29]Id. ¶ 20.

[30]Id. ¶ 21.

[31]Id. at 5 ¶ 23.

injury to persons and substantially obstructed the performance of unit operations[.]"[32]

In the Offense Report that charged Gonzales with "rioting" in violation of Offense Code 8.0, the charging officer (Officer Lindeman) alleged that Gonzales and three other offenders assaulted multiple officers during the incident that occurred on September 7, 2014.[33] The altercation caused a "partial lockdown" of the unit and also "resulted in a major use of force and injuries to officers."[34]

In a separate Offense Report that charged Gonzales with "Assaulting an Officer Without a Weapon, Non-Serious Injury" in violation of Offense Code 3.3, Officer Lindeman disclosed that Gonzales "struck [him] in the face with a closed fist" during the altercation.[35] Lindeman added that the assault "resulted in injuries that required treatment up to first aid."[36] Records of the investigation indicate that Lindeman suffered "swelling," "knots," and "redness" as a result of being assaulted during the riot.[37] The

---

[32]TDCJ Disciplinary Report and Hearing Record, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 58. The other inmates involved were identified as Adrian Hernandez (TDCJ #1515064); George Aleman (TDCJ #1314248); and Ernesto Torres (TDCJ #1184671). See id.

[33]Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 59.

[34]Id.

[35]Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 61.

[36]Id.

[37]Supervisor's Investigation of Employee/Offender Injury, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 67.

disciplinary charges against Gonzales for rioting and assault were approved by a supervisory officer (Sergeant Rayfield), who reviewed both Offense Reports.[38]

On September 10, 2014, a disciplinary hearing was held on the charges lodged against Gonzales in Case No. 20150010578.[39]   A disciplinary hearing officer found Gonzales guilty as charged of participating in a riot and assaulting an officer in that case.[40] As punishment, Gonzales lost commissary and recreational privileges for 45 days and he also forfeited 349 days of previously earned good-time credit.[41]

## D.   Change in Custodial Classification

On the same day that Gonzales was convicted of the disciplinary charges against him in Case No. 20150010578, a three-member panel of the Unit Classification Committee ("UCC") met at the Estelle Unit and recommended placing a Security Precaution

---

[38]Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 59; TDCJ Preliminary Investigation Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 60; Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 61; TDCJ Preliminary Investigation Report, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 62.

[39]TDCJ Disciplinary Report and Hearing Record, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 58.

[40]Complaint, Docket Entry No. 4, p. 5; TDCJ Disciplinary Report and Hearing Record, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 58.

[41]TDCJ Disciplinary Report and Hearing Record, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 58.

Designator code for Staff Assault ("SA") in Gonzales's records.[42]
Ballard was a member of the UCC panel that recommended placing the
SA designator code in Gonzales's classification records.[43]

According to Administrative Directive AD-04.11, which is the
TDCJ classification policy on Security Precaution Designators,
"[c]ertain behaviors warrant special consideration; therefore,
serious behavioral infractions shall be identified and communicated
with staff to ensure [that] offenders receive the appropriate
levels of supervision."[44]   Under this policy "[a] 'Security
Precaution Designator' (SPD) is a code documented in an offender's
record that identifies the offender as a special management risk."[45]
As it pertains to Gonzales, the "Staff Assault Precaution
Designator (SA)" is one of several restrictive codes, in addition
to those for escape, hostage-taking, or defeating restraints, which
may be imposed as follows:

> "Staff Assault Precaution Designator" (SA) is a code
> documented in the record of an offender who has a history
> of serious staff assault.  A serious staff assault has

---

[42]UCC History Form, Exhibit B to Defendants' MSJ, Docket Entry
No. 60-2, p. 3; Affidavit of Deborah Buckner ("Buckner Affidavit"),
Exhibit D to Martinez Report, Docket Entry No. 54-2, p. 2
(confirming that Gonzales was given a Security Precaution
Designation on September 10, 2014).

[43]Defendants' MSJ, Docket Entry No. 60, p. 7.

[44]Administrative Directive AD-04.11 — Security Precaution
Designators ("AD-04.11") Rev. 4, July 1, 2013, Exhibit D to
Defendants' MSJ, Docket Entry No. 60-4, p. 3.

[45]Id. at 5.

occurred if an offender intentionally strikes a staff
member resulting in serious injury, as determined by unit
medical staff. Serious injury requires treatment beyond
first aid, such as sutures, a fracture, or
hospitalization. If the unit classification committee
(UCC) determines that an offender's behavior was such
that serious bodily injury was imminent to staff had it
not been for an intervening factor, for example the
offender tried to stab a correctional officer, but the
correctional officer's thrust vest prevented serious
bodily injury, the UCC may recommend placement of the SA
code. This code is only to be used in extraordinary
circumstances where the intent and probable outcome of
the assault are clear . . . .[46]

For up to ten years following a staff assault fitting this
description, or until the SPD code is removed, offenders with the
SA designation may not be "assigned to a custody designation less
restrictive than G4/J4,"[47] which the defendants characterize as
"medium security custody."[48]

On September 11, 2014, Gonzales was notified that he was being
placed in administrative segregation located within the Estelle
Unit High Security Unit.[49] That placement was recommended by the
Warden, who determined that Gonzales posed a "[t]hreat to the
physical safety of others and/or the order and security of the
prison."[50] In particular, the placement was made because "[o]n

---

[46]Id. at 5-6.

[47]Id. at 6.

[48]Defendants' MSJ, Docket Entry No. 60, p. 8.

[49]TDCJ Administrative Segregation Initial Placement &
Notification, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5,
p. 50.

[50]Id.

September 7, 2014 Offender Gonzales was involved in a Gang Riot which resulted in a staff assault with injuries above first aid."[51] Although Gonzales had no declared gang affiliation at that time, he was being "monitored" to confirm whether he was a member of a Security Threat Group ("STG").[52]   A three-member Administrative Segregation Committee, which included Major Townsend, voted to confine Gonzales in administrative segregation because of his disciplinary conviction in Case No. 20150010578,[53] which featured "riot involvement" and "staff assault."[54]

## E.   Grievances and Appeals Filed by Gonzales

Gonzales filed several grievances to appeal both the disciplinary conviction and the classification decision through the two-step administrative process available at TDCJ.[55]   The relevant grievances are summarized briefly below.

On September 12, 2014, officials at the Estelle Unit received a Step 1 Grievance that was executed by Gonzales on September 10,

---

[51]Id.

[52]Id.

[53]TDCJ Administrative Segregation Initial Hearing Record, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 51.

[54]TDCJ Administrative Segregation Level Review, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 52.

[55]A Step 1 Grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event.  See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004).  Once an inmate receives a response to his Step 1 Grievance, he then has up to ten days to file a Step 2 Grievance to appeal any unfavorable result.  See id. Step 2 Grievances are reviewed at the state level.  See id.

2014, challenging his disciplinary conviction in Case No. 20150010578.[56] After considering a review of the proceeding conducted by a unit grievance investigator,[57] Lacox responded that there were "no procedural errors" noted and that there was sufficient evidence to support the disciplinary conviction.[58] Gonzales filed a Step 2 Grievance to appeal the result, but the state official who reviewed it ("B. Parker") found that his arguments were "without merit" and sustained the conviction for the same reasons articulated by Lacox.[59]

On September 22, 2014, Gonzales submitted a Step 1 Grievance alleging that the "administration retaliated on [him] for Disciplinary Case #20150010578, and deprived [him] of procedural due process by placing [him] in [administrative] segregation."[60] A grievance investigator reviewed the claims and contacted a supervisor in the Estelle Unit High Security Unit, Captain Jody

---

[56]Step 1 Grievance #2015007125, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, pp. 53-54.

[57]Grievance Investigation Worksheet, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 56; Disciplinary Worksheet and Document Checklist, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 57.

[58]Step 1 Grievance #2015007125, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 54.

[59]Step 2 Grievance #2015007125, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, pp. 51-52.

[60]Step 1 Grievance #2015011834, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 74. This Step 1 Grievance was signed by Gonzales on September 19, 2014, and received by officials on September 22, 2014. See id. at 75.

Vincent.[61]  Captain Vincent served on the committee that made the initial recommendation to place Gonzales in administrative segregation.[62]  In response to the Step 1 Grievance, Captain Vincent replied that he had not retaliated against Gonzales "in any way."[63] After considering the reply from Captain Vincent, Lacox responded that "[n]o further action" would be taken on Gonzales's Step 1 Grievance because "Estelle Administration at High Security" denied retaliating against him.[64]

Gonzales promptly submitted a Step 2 Grievance to appeal the response that he received from Lacox, insisting that the arguments he asserted in his Step 1 Grievance had been "disregarded by unit administration" and that no corrective action had been taken to remedy the retaliation.[65]  Gross responded to the Step 2 Grievance, stating that there was "insufficient evidence" to support Gonzales's claims and that "[n]o further investigation" was warranted.[66]

---

[61]Grievance Investigation Worksheet, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 78.

[62]TDCJ Administrative Segregation Initial Hearing Record, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 51.

[63]Grievance Investigation Worksheet, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 78.

[64]Step 1 Grievance #2015011834, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 75.

[65]Step 2 Grievance #2015011834, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 72.

[66]Id. at 73.

Gonzales remained in administrative segregation for over two years after the incident that occurred on September 7, 2014, which resulted in the disciplinary conviction in Case No. 20150010578.[67] After a semi-annual review by the State Classification Committee ("SCC") on December 15, 2016, Gonzales was told that he would remain in administrative segregation.[68]   On December 20, 2016, Gonzales filed a Step 1 Grievance to challenge the SCC's classification decision, arguing that the disciplinary conviction did not involve serous injuries beyond first aid and seeking his release to general population.[69] A grievance investigator contacted Ballard, who noted that Gonzales had an SPD code for staff assault and that it had only been two years since the assault occurred.[70] Based on this information Lacox responded to the Step 1 Grievance on January 20, 2017, explaining to Gonzales that he had an SPD code for "staff assault" in his record that restricted his classification.[71]  Gonzales filed a Step 2 Grievance to appeal that determination, insisting that the SPD code was unjustified because the incident with Officer Lindeman did not result in serious injury

---

[67]Amended Complaint, Docket Entry No. 49, p. 5.

[68]Id. ¶ 25.

[69]Step 1 Grievance #2017059808, Exhibit A to Martinez Report, Docket Entry No. 14-1, pp. 134-35.

[70]Grievance Investigation Worksheet, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 138.

[71]Step 1 Grievance #2017059808, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 135.

beyond first aid, but the reviewing official concluded that Gonzales had been "appropriately advised" at Step 1 and summarily rejected his arguments.[72]

Gonzales filed another Step 1 Grievance to challenge his classification and assignment to administrative segregation, arguing that Warden Lacox and two other officials were retaliating against him by refusing to remove the SPD code in his records because of the staff assault, which did not involve serious injuries beyond first aid or justify the SPD code in Gonzales's view.[73]   The grievance investigator contacted Ballard, who clarified that during the assault an officer sustained an injury that required the application of "steri-strips," which qualified as an injury that was "beyond first aid."[74]   Lacox responded to the grievance, advising Gonzales that the SPD code was properly imposed.[75]

Gonzales promptly filed another Step 1 Grievance, complaining that the response to his previous Step 1 Grievance was improper and that Lacox was not an "impartial authority" because he had accused

---

[72]Step 2 Grievance #2017059808, Exhibit A to Martinez Report, Docket Entry No. 14-1, pp. 132-33.

[73]Step 1 Grievance #2017090342, Exhibit A to Martinez Report, Docket Entry No. 14-1, pp. 38-39.

[74]Grievance Investigation Worksheet, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 40.

[75]Step 1 Grievance #2017090342, Docket Entry No. 14-1, Exhibit A to Martinez Report, p. 39.

Lacox of retaliation.[76] A grievance investigator concluded that the previous grievance that Gonzales had filed against Lacox and the other officials was "properly reviewed."[77] Warden Carter responded that Gonzales's previous grievance had been reviewed and his claim about the SPD code had been addressed.[78] Warden Carter noted further that "unit administration does not have authority to remove SPDs."[79] Warden Carter explained that only the SCC can remove an SPD code.[80]

Gonzales met with the SCC for his next semi-annual review on June 22, 2017, and again he asked that the SPD code be removed.[81] On June 27, 2017, Gonzales filed another Step 1 Grievance regarding the SPD restriction on his classification, arguing that the designation was improper because he did not commit an assault causing serious injury.[82] Lacox responded that the designation was reviewed by the "classification department" and determined to be

---

[76]Step 1 Grievance #2017100463, Exhibit A to Martinez Report, Docket Entry No. 14-1, pp. 32-33.

[77]Grievance Investigation Worksheet, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 35.

[78]Step 1 Grievance #2017100463, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 33.

[79]Id.

[80]Id.

[81]Amended Complaint, Docket Entry No. 49, p. 6 ¶¶ 33-34.

[82]Step 1 Grievance #2017161468, Docket Entry No. 1, pp. 7-8.

"appropriate."[83]  After Gonzales filed a Step 2 Grievance to appeal that determination, Gross responded that Gonzales's allegations "could not be sustained" and that the decision made at the Step 1 level was proper.[84]

On September 11, 2017, Gonzales spoke to Captain Vincent about whether the SPD code placed on his classification was correctly imposed and who recommended it.[85]   Several days later, on September 14, 2017, Captain Vincent reportedly advised Gonzales that Townsend "signed off for the SPD placement recommendation to Mrs. Ballard, because [Gonzales] caused Officer [Lindeman] serious injuries."[86]

## F.   Gonzales's Claims and Defendants' MSJ

Gonzales insists that the SPD code was improperly placed on his classification for retaliatory reasons because the assault he was convicted of committing against Officer Lindeman did not result in serious injury and, therefore, did not warrant the SA designation.[87]   Gonzales's primary claim is that Townsend and Ballard have violated the First Amendment by falsifying records about the extent of Officer Lindeman's injuries and that these

---

[83]See id. at 8.

[84]Step 2 Grievance #2017161468, Docket Entry No. 1, pp. 9-10.

[85]Amended Complaint, Docket Entry No. 49, p. 6 ¶ 39.

[86]Id.

[87]Id. at 7.

falsified records have resulted in the SPD code that is keeping him in a restrictive custodial classification status in retaliation for filing grievances.[88]  Gonzales claims further that the John Doe UCC Coordinator violated his rights under the First Amendment by placing the SPD code in Gonzales's classification records when he should have noticed that Officer Lindeman's injuries were not serious enough to warrant the SA designator.[89]   Gonzales also contends that Gross and Lacox retaliated against him in violation of the First Amendment by failing to "remove, stop or correct" the invalid SPD code after Gonzales challenged his classification during the grievance process.[90]

Gonzales seeks a declaratory judgment stating that the defendants violated his rights under the First Amendment in connection with the SPD code that was placed in his records based on falsified evidence for the purpose of retaliation.[91]  Gonzales also seeks an injunction ordering the defendants to cease retaliating against him and remove the SPD code from his classification records.[92]

The defendants move for summary judgment, arguing that Gonzales was aware of his primary retaliation claim against

---

[88]Id. ¶ 44.

[89]Id. at 7-8 ¶ 45.

[90]Id. at 8 ¶ 46.

[91]Id. at 8-9 ¶¶ A.1-4.

[92]Id. at 9 ¶¶ B.1-2 and C.1.

Townsend and Ballard in 2014, when the retaliatory acts occurred, and that his claims against them are barred by the governing two-year statute of limitations.[93]  The defendants contend further that Gonzales cannot prevail on a retaliation claim because he does not demonstrate retaliatory intent or that but for any improper motive the SPD code would not have been placed in his classification records after he was convicted of rioting and assault on staff, which involved serious injury to at least one officer.[94]  The defendants present several other alternative arguments, including qualified immunity,[95] which will not be addressed.[96]

_____

[93]Defendants' MSJ, Docket Entry No. 60, pp. 17-18.

[94]See id. at 10-14.

[95]The defendants argue that they are entitled to qualified immunity from suit against them in their individual capacities because their actions did not violate the Constitution and were objectively reasonable under the circumstances.  See Defendants' MSJ, Docket Entry No. 60, pp. 14-16.  The court does not address this defense because Gonzales only seeks declaratory and injunctive relief from the defendants in their official capacity.  See Amended Complaint, Docket Entry No. 49, pp. 2, 8-9.  "Neither absolute nor qualified immunity extends to suits for injunctive or declaratory relief under § 1983."  Orellana v. Kyle, 65 F.3d 29, 33 (5th Cir. 1995) (internal quotation marks and citation omitted); Williams v. Ballard, 466 F.3d 330, 334 & n.7 (5th Cir. 2006) (observing that qualified immunity does not apply to claims for prospective injunctive relief).

[96]The defendants contend that Gonzales lacks standing to seek injunctive relief from the classification restriction imposed by the SPD code because that type of claim can only be raised in a habeas corpus proceeding.  See Defendants' Reply, Docket Entry No. 62, p. 5.  The defendants cite no authority providing that habeas corpus review is available from a classification decision of the sort at issue in this case.  A reduction in custody level is ordinarily considered a mere change in a prisoner's conditions of
(continued...)

## II.  <u>Standard of Review</u>

Defendants' MSJ is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2018); <u>see also Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  <u>Id.</u>

A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment[.]"  <u>Smith v. Regional Transit Authority</u>, 827 F.3d 412, 417 (5th Cir. 2016) (internal quotation marks and citation omitted).  If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's

---

[96](...continued)
confinement, which does not implicate the Due Process Clause of the United States Constitution and is not subject to challenge in a federal habeas corpus proceeding.  <u>See Sandin v. Conner</u>, 115 S. Ct. 2293, 2300 (1995) (concluding that placement in segregated confinement does not implicate a protected liberty interest unless it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); <u>but see Wilkinson v. Austin</u>, 125 S. Ct. 2384, 2395 (2005) (finding that prisoners have a liberty interest in avoiding assignment to a supermax facility).

case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (internal quotation marks and citation omitted); Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

A non-movant cannot avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (citations and internal quotation marks omitted). In other words, the non-movant's burden is not met by the manufacture of "some metaphysical doubt as to the material facts." Matsushita, 106 S. Ct. at 1356 (citations omitted); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (stating that a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The court is mindful of the fact that plaintiff proceeds pro se in this case. Courts are required to give a pro se litigant's contentions, however inartfully pleaded, a liberal construction. See Erickson v. Pardus, 127 S. Ct. 1081, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint are held to less stringent

standards than formal pleadings drafted by lawyers). The traditional standard of leniency toward pro se pleadings, however, does not excuse a pro se plaintiff from the "burden of opposing summary judgment through the use of competent summary judgment evidence." Malcolm v. Vicksburg Warren School District Board of Trustees, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing Davis v. Fernandez, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

## III. **Discussion**

### A.   **Statute of Limitations**

The defendants argue that Gonzales's claims against Townsend and Ballard are barred by the governing statute of limitations because the retaliatory acts attributed to these officials in the Amended Complaint occurred in September of 2014, but Gonzales did not file this case until three years later on October 20, 2017.[97] The defendants correctly note that Gonzales's civil rights claims under 42 U.S.C. § 1983 are governed by the two-year statute of limitations provided by Texas law. See Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). This means that Gonzales had two years from

---

[97]Defendants' MSJ, Docket Entry No. 60, pp. 17-18. The original form complaint filed by Gonzales was executed on October 9, 2017, and received for filing on October 20, 2017. See Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 5.

-23-

the time that his claims accrued to file a civil rights complaint concerning his allegations. See Gonzalez v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998).

Federal law determines when a cause of action accrues under § 1983. See Smith v. Regional Transit Authority, 827 F.3d 412, 421 (5th Cir. 2016). A claim generally accrues "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" by actions attributable to the defendant. Piotrowski, 237 F.3d at 576 (internal quotation marks and citations omitted).

Gonzales contends that his claim did not accrue until January 20, 2017, when he received a response to the Step 1 Grievance that he filed regarding the SCC's decision to continue his confinement in administrative segregation and was advised by Lacox that an SPD code for staff assault was in his records.[98] The Fifth Circuit has held, however, that a retaliation claim accrues when the retaliatory acts occurred. See Hanna v. Maxwell, 548 F. App'x 192, 196 (5th Cir. 2013) (per curiam) (citing Woods v. Smith, 60 F.3d 1161, 1164-65 (5th Cir. 1995)).

Although Gonzales alleges that he was not privy to the UCC committee's decision to impose the SPD code,[99] the record indicates that Gonzales was not unaware of the facts underlying his claim.

---

[98]Plaintiff's Response, Docket Entry No. 61, p. 9 (citing Amended Complaint, Docket Entry No. 49, p. 5 ¶ 27).

[99]Amended Complaint, Docket Entry No. 49, p. 7 ¶ 43.

Gonzales states that Major Townsend threatened him during his investigation of the riot and staff assault involving Officer Lindeman on September 7, 2014, and warned Gonzales not to write anything up or file a grievance.[100]  After Gonzales was convicted of the disciplinary charges against him on September 10, 2014, the classification records establish that Gonzales was notified on September 11, 2014, that his placement in administrative segregation was based on his participation in a riot on September 7, 2014, which resulted in a staff assault that included injuries above first aid.[101]  Major Townsend notified Gonzales again on September 16, 2014, that his placement in administrative segregation was because of his "riot involvement" and "staff assault" that occurred on September 7, 2014.[102]  Ballard also notified Gonzales on December 16, 2014, that the SCC decided to retain him in administrative segregation due to his "Staff Assaultive (SA)" record, referencing the SPD code imposed pursuant to AD-04.11.[103]  Based on this record, it appears that Gonzales's claim of retaliation regarding the initial decision to impose an

---

[100]See id. at 4; see also Plaintiff's MDS, Docket Entry No. 9, p. 6.

[101]TDCJ Administrative Segregation Initial Placement & Notification, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 50.

[102]TDCJ Administrative Segregation Level Review, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 52.

[103]SCC Administrative Segregation Review Hearing Record, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, pp. 40-41.

SPD code on his classification is untimely.   See Hanna, 548
F. App'x at 196.   More importantly, his retaliation claim is
without merit for other reasons that follow.

## B.   Retaliation

Gonzales contends that the defendants retaliated against him
by placing an improper SPD code in his classification records or by
refusing to remove the improper SPD code in violation of his right
to file grievances, which is protected by the First Amendment.[104]
"'To prevail on a claim of retaliation, a prisoner must establish
(1) a specific constitutional right, (2) the defendant's intent to
retaliate against the prisoner for his or her exercise of that
right, (3) a retaliatory adverse act, and (4) causation.'"
Alexander v. Texas Department of Criminal Justice, 951 F.3d 236,
240-41 (5th Cir. 2020) (quoting McDonald v. Steward, 132 F.3d 225,
231 (5th Cir. 1998)).   It is well established that "a prison
official may not retaliate against or harass an inmate for . . .
complaining to a supervisor about a guard's misconduct." Woods, 60
F.3d at 1164.   Thus, "'f]iling a grievance is a constitutionally
protected activity, and a prison official may not retaliate against
a prisoner for engaging in a protected activity.'"   Brown v.
Taylor, 911 F.3d 235, 245 (5th Cir. 2018) (quoting Huff v. Thaler,
518 F. App'x 311, 312 (5th Cir. 2013)).

---

[104]Amended Complaint, Docket Entry No. 49, pp. 7-8.

The defendants maintain that Gonzales cannot prevail because he does not establish that the SPD code was imposed as the result of retaliatory intent or motive.[105] To satisfy this element "[an] inmate must allege more than his personal belief that he is the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (citing Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997)).  Instead, "[an] inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Woods, 60 F.3d at 1166 (internal quotation marks and citations omitted).

Gonzales does not demonstrate that Gross, Lacox, or the John Doe UCC Coordinator had any personal involvement in the underlying decision to place the SPD code in his records or that these defendants had any motive to retaliate against him during any part of the process.[106]  For this reason, Gross, Lacox, and the John Doe UCC Coordinator are entitled to summary judgment.

---

[105]Defendants' MSJ, Docket Entry No. 60, pp. 10-13.

[106]To the extent that Gonzales faults Gross and Lacox for failing to remove the SPD code during the grievance process, this allegation fails to state a claim because it is well established that an inmate has no constitutionally protected interest "in having [] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).  In addition, the record indicates that neither Gross, Lacox, nor the John Doe UCC Coordinator had authority to remove the SPD code after it was imposed.  See Response by Warden Carter to Step 1 Grievance #2017100463, Docket Entry No. 14-1, Exhibit A to Martinez Report, p. 33 (explaining that unit administration lacks authority to remove an SPD code and that such requests must be raised before the SCC).

As proof of retaliatory intent by Townsend and Ballard, Gonzales notes that Ballard served on the UCC committee that recommended imposing the SPD code; and Gonzales asserts that Townsend, who threatened him while investigating the incident that formed the basis for his disciplinary conviction, told Ballard to place this restriction on his classification out of spite.[107] Specifically, Gonzales claims that Townsend directed Ballard "to falsify records to exaggerate Officer Lindeman's injuries."[108] There is no evidence that Officer Lindeman's injuries were embellished or that any records to that effect were altered or falsified by Ballard to elevate the injuries Lindeman sustained on September 7, 2014, from minor to serious.  The record reflects, moreover, that Ballard was only one individual on a three-person UCC committee that decided to place the SPD code in Gonzales's classification records.[109]  Gonzales provides no direct evidence establishing that Ballard's recommendation was influenced by ill-will harbored by Townsend towards Gonzales, whose "conclusionary allegations of retaliation will not withstand a summary judgment challenge."  Woods, 60 F.3d at 1166.

Gonzales does not otherwise establish a chronology from which retaliatory intent can be inferred.  The record shows that his

---

[107]Amended Complaint, Docket Entry No. 49, pp. 6-7.

[108]Plaintiff's Response, Docket Entry No. 61, p. 2.

[109]UCC History Form, Exhibit B to Defendants' MSJ, Docket Entry No. 60-2, p. 3.

classification was changed on September 10, 2014, immediately after he was convicted of violating prison disciplinary rules by participating with several other inmates in a riot, which provoked assaults on multiple officers and involved a major use of force.[110] The SPD code was imposed by the three-person UCC committee the same day as the disciplinary conviction and before Gonzales filed any grievance to appeal that conviction.[111]   The following day Gonzales was assigned to administrative segregation by a three-member committee,[112] based on a recommendation by the Warden, due to Gonzales's involvement in a "Gang Riot which resulted in a staff assault with injuries above first aid."[113]   Although the record reflects that Gonzales executed a Step 1 Grievance to challenge the disciplinary conviction on September 10, 2014, it was not received by officials until September 12, 2014, after the restrictions on Gonzales's classification had been imposed.[114]   Based on this chronology, Gonzales does not demonstrate that the SPD code was

---

[110]TDCJ Disciplinary Report and Hearing Record, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 58.

[111]UCC History Form, Exhibit B to Defendants' MSJ, Docket Entry No. 60-2, p. 3; Buckner Affidavit, Exhibit D to Martinez Report, Docket Entry No. 54-2, p. 2.

[112]TDCJ Administrative Segregation Initial Hearing Record, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 51.

[113]TDCJ Administrative Segregation Initial Placement & Notification, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, p. 50.

[114]Step 1 Grievance #2015007125, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, pp. 53-54.

imposed improperly for filing grievances or as the result of any retaliatory intent by Townsend or Ballard.

Even if Gonzales could establish retaliatory intent, the defendants argue further that he cannot satisfy the element of causation.[115] "In this context, causation means that but for the retaliatory motive, the complained of incident would not have occurred." Streater v. Allen, 805 F. App'x 293, 296 (5th Cir. 2020) (per curiam) (internal quotation marks, alteration, and citation omitted). "To avoid summary judgment on the issue of but for causation, a prisoner must demonstrate a conflict in the evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Walker v. Savers, 658 F. App'x 720, 727 (5th Cir. 2016) (per curiam) (internal quotation marks and citation omitted). Gonzales does not make that showing here because he does not demonstrate that the SPD code was unjustified or unwarranted under the applicable policy.[116]

Gonzales points to the TDCJ policy, which states that the SPD code for staff assault requires a serious injury, and reasons that this code was improperly placed in his records based on false information because Officer Lindeman suffered, at most, minor

---

[115]Defendants' MSJ, Docket Entry No. 60, pp. 13-14.

[116]AD-04.11, Exhibit D to Defendants' MSJ, Docket Entry No. 60-4, pp. 5-6 (describing the SPD code SA for staff assaults).

injuries that did not require treatment beyond first aid.[117]
Although the record confirms that Officer Lindeman sustained only
minor injuries after being punched in the face by Gonzales during
the altercation that occurred on September 7, 2014,[118] the record
refutes Gonzales's claim that the SPD code was not properly imposed
by classification officials under the governing policy.   When
Gonzales challenged the SPD code through the grievance process
Ballard replied that the code was imposed because, during the
assault perpetrated by Gonzales, an officer sustained an injury
that required the application of "steri-strips," which qualified as
an injury that was "beyond first aid."[119]  Ballard's explanation is
supported by the Incident Report, which shows that Officer Walker,
who came to Officer Lindeman's aide after Gonzales attacked him,
sustained a serious injury that required steri-strips in lieu of
sutures to close a laceration caused by that assault.[120]

Gonzales maintains that the SPD code was improper because the
officer he was convicted of assaulting, Officer Lindeman, did not

---

[117]Amended Complaint, Docket Entry No. 49, pp. 6-7; Plaintiff's Cross-Motion, Docket Entry No. 63, pp. 1-2.

[118]Supervisor's Investigation of Employee/Offender Injury, Exhibit A to Defendants' MSJ, Docket Entry No. 60-1, p. 67; Incident Report, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, pp. 55-57.

[119]Grievance Investigation Worksheet, Exhibit A to Martinez Report, Docket Entry No. 14-1, p. 40.

[120]Incident Report, Exhibit E to Defendants' MSJ, Docket Entry No. 60-5, pp. 55-57.

require treatment beyond first aid and, therefore, the SPD code must have been based on altered records or falsified evidence of Lindeman's injuries.[121]   However, Gonzales does not dispute that Officer Walker was treated for a serious injury as determined by unit medical providers during the incident that resulted in his disciplinary conviction for rioting and assault on a staff member. Because Gonzales fails to show that the SPD code would not have been imposed but for his record of filing grievances, he cannot demonstrate the requisite causation and his retaliation claim fails.   See, e.g., Johnson v. Rodriguez, 110 F.3d 299, 312 (5th Cir. 1997) (Observing that if "adverse action is attributable to unprotected activity and would have occurred on that basis regardless of the exercise of protected rights, the [retaliation] claim fails on the element of causation.").   The defendants are entitled to summary judgment on this issue and, as a result, this action will be dismissed.

## IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follow:

1.   The Motion for Summary Judgment on Behalf of Defendants Gross, Lacox, Ballard, and Townsend (Docket Entry No. 60) is **GRANTED**.

2.   Plaintiff's Cross-Motion to Defendants' [Reply] to Plaintiff's Response to Defendants' Motion for Summary Judgment (Docket Entry No. 63) is **DENIED**.

---

[121]Amended Complaint, Docket Entry No. 49, pp. 5-7; Plaintiff's Response, Docket Entry No. 61, p. 2.

-32-

3.    This action will be dismissed with prejudice.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 17th day of July, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE